1522-CC00018

MISSOURI CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT
(CITY OF ST. LOUIS)

| | |
|---|---|
| LINDA NICHOLS, DONAL LEE, THERESA NIXON, LENNA JEAN ROWE, ANGELINE UNGERER, GINA YEHLE, NIKISHA LENOIR, ROSETTA FOUNTAINE, ERNIE FITZ, PAULINE MININGER, ELIZABETH TERRY, CINDY ZEIGER, TONYA ADDISON, KIMBERLY BARE, STEPHANIE CHADWICK, WILLIAM DAVIS, THERESA KING, MARGARET PARKER, MINNIE PARKER, JANIE SHARPE, MARY THOMPSON, ELEANOR SMITH, ELENA CRUZ, RUBINA BAROS, EVANGELINE CISNEROS, HILDA HERNANDEZ, SUSAN SNYDER, JULIE CORRAL, BARBARA EUBANK, JACQUELINE SANTIAGO, STACY WEIBERTH, VONDA COX, DENISE PERKINS, DOROTHY FRANCIS, STEPHANIE HARGROVE, JUDY GARDNER, CLAUDETTE MOFFET, LORETTA AMMONS, REBECKAH AXELSEN, PEARL BROWN, RENE COLLINS, JANET HARRIS, OLIVIA SMOLEN, JOAN THOMAS, KYESHIA AMMONS, DARRIN CARTWRIGHT, KLEOPATRA FERO, PAMELA GREEN, DEBORAH HELBIG, DAWN HUGHES, DIANN NUGENT, TAMMY SMITHER, GLORIA STEVENS, LENIKA BEAULIEU, EMARD CROSTON, DIANE HANSON, KATHERINE HEALD, DENICE MACIEJ, DORETHA SIMPSON, THERESA JONES, ELISE SANDERS, ANGELA SHARP, JAY BLANK, AMY COPE, HAROLD EVANS, MARIE GALETTE, PATRICIA KALAVSKY, JACQUELINE KING, HENRY PATTERSON, SALLY SUCCI, SHARON THOMPSON, AND LISA CRYDER,<br><br>Plaintiffs, | CASE NO.: ____________<br><br>**JURY TRIAL DEMANDED** |

vs. )
)
SKECHERS USA, INC., )
)
SERVE: )
Registered Agent )
Corporation Service Company )
2711 Centerville Rd., Suite 400 )
Wilmington, DE 19808 )
)
)
SKECHERS USA, INC. II, )
)
SERVE: )
Registered Agent )
Corporation Service Company )
2711 Centerville Rd., Suite 400 )
Wilmington, DE 19808 )
)
)
SKECHERS FITNESS GROUP )
)
SERVE: )
Registered Agent )
Philip Paccione )
228 Manhattan Beach Blvd. )
Manhattan Beach, CA 90266 )
)
)
Defendants. )
)

---

**PETITION**

Plaintiffs, by and through undersigned attorneys, bring this action alleging the following upon information and belief:

**NATURE OF THE CASE**

1. This lawsuit concerns personal injury related to Plaintiffs' use of Skechers Shape-ups toning shoes marketed and sold by defendants.

2. Plaintiffs allege that Defendants Skechers USA, Inc., Skechers USA, Inc. II, and

Skechers Fitness Group knowingly or negligently manufactured, marketed, distributed, and sold defectively designed shoes without adequate warnings.

## JURISDICTION AND VENUE

3. Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, the Court has personal jurisdiction over the defendants, because Defendants are present in the State of Missouri, such that requiring an appearance does not offend traditional notions of fair play and substantial justice.

4. This court has personal jurisdiction over the Defendants pursuant to and consistent with Missouri's long arm statute (R.S.Mo. §506.500) and the Constitutional requirements of Due Process in that the Defendants, acting through their agents or apparent agents, committed one or more of the following:

a. The transaction of any business within the state;

b. The making of any contract within the state;

c. The commission of a tortious act within this state; and

d. The ownership, use, or possession of any real estate situated within this state.

5. Requiring Defendants to litigate these claims in Missouri does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution. Defendants operate multiple stores within the State of Missouri and derive substantial revenue from the sale of their products within the state of Missouri. All Plaintiffs' claims arise in part from conduct Defendants purposely directed to Missouri including but not limited to the sale and marketing of their products.

6. The Plaintiffs' claims arise out of Defendants' design, marketing and sale of Skechers Shape-ups in the State of Missouri.

7. These Defendants regularly conduct or solicit business and derive substantial revenue from goods used or consumed in, inter alia, the State of Missouri.

8. Additionally, certain Plaintiffs suffered injury from the Defendants' products in Missouri, City of St. Louis. Accordingly, venue is proper under R.S.Mo. §508.010.

9. Plaintiffs each individually seek relief that is within the jurisdictional limits of the Court in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

## JOINDER OF PLAINTIFFS

10. Joinder of Plaintiffs in this Petition is proper pursuant to R.S.Mo. §507.040 (1) because Plaintiffs' right to relief arises out of the same transaction, occurrence, or series of transactions or occurrences and involves common questions of law and fact.

## PARTIES – DEFENDANTS

11. The Defendant, Skechers U.S.A., Inc., is a corporation organized and existing under the laws of the state of Delaware, with its principle place of business at 228 Manhattan Beach Blvd., Manhattan Beach, CA 90266. At all times relevant hereto, Skechers conducted regular and sustained business in Missouri and specifically St. Louis County and within the city of St. Louis by labeling, marketing, distributing, promoting and selling its products in Missouri and specifically St. Louis County and within the city of St. Louis.

12. The Defendant, Skechers U.S.A., Inc. II, is a corporation organized and existing under the laws of the state of Delaware, with its principle place of business at 228 Manhattan Beach Blvd., Manhattan Beach, CA 90266. At all times relevant hereto, Skechers conducted regular and sustained business in Missouri and specifically St. Louis County and within the city of St. Louis by labeling, marketing, distributing, promoting and selling its products in Missouri and specifically St. Louis County and within the city of St. Louis.

13. Skechers Fitness Group is a trademarked subsidiary of Skechers U.S.A., Inc. II with its principle place of business at 228 Manhattan Beach Blvd., Manhattan Beach, CA 90266. At all times relevant hereto, Skechers conducted regular and sustained business in Missouri and specifically St. Louis County and within the city of St. Louis by labeling, marketing, distributing, promoting and selling its products in Missouri and specifically St. Louis County and within the city of St. Louis.

14. Defendants Skechers USA, Inc., Skechers USA, Inc. II, and Skechers Fitness Group shall herein be referred to collectively as "Defendants."

**PARTIES – PLAINTIFFS**

15. Plaintiff, Linda Nichols is and was at all times alleged herein a citizen of the State of Missouri and currently resides in the city of St. Louis at 4956 S. Alcott Ave., St. Louis, Missouri 63120 and brings this action in her individual capacity.

16. Plaintiff Linda Nichols purchased a pair of Skechers Shape-ups in or about December of 2011 at Marshalls in the city of St. Louis, Missouri. Plaintiff began wearing these shoes during her daily activities in the city of St. Louis, Missouri. In or about February 2012, Linda Nichols developed excruciating pain in her feet and back after wearing her Skechers Shape-ups toning shoes at her home in St. Louis. In or about March 2012, as a result of the continuous pain, Plaintiff presented to her medical provider where medical care demonstrated she had damage to her feet and back.

17. Plaintiff, Donal Lee, is and was at all times alleged herein a citizen of the State of Missouri and currently resides in 128 E. Wilson St., Carterville, Missouri 64835 and brings this action in his individual capacity.

18. Plaintiff Donal Lee purchased a pair of Skechers Shape-ups on or about July 2, 2010 from Shoe Carnival in Joplin, Missouri. Plaintiff began wearing these shoes during his daily activities in Carterville, Missouri. Plaintiff wore the shoes for approximately three months until he began to experience excruciating pain in or about December 2010. When the paid did not subside, Plaintiff presented to Dr. David Hicks of Orthopedic Specialists of Springfield for medical attention. In or about October 2011, through medical testing, Plaintiff was diagnosed with Osteochondritis dissecans in the right ankle. Plaintiff also sustained additional damage to the right ankle as a result of his use of Skechers Shape-ups.

19. Plaintiff, Theresa Nixon, is and was at all times alleged herein a citizen of the State of Missouri and currently resides in 2444 S. County Lane, #124, Carthage, Missouri 64836 and brings this action in her individual capacity.

20. Plaintiff Theresa Nixon purchased a pair of Skechers Shape-ups in or about January of 2011 from Kohl's in Joplin, Missouri. Plaintiff began wearing these shoes during her daily activities in Carthage, Missouri. On or about April 9, 2011, Theresa Nixon was walking inside on flat stairs. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Skaggs Community Health Center where medical testing demonstrated a fracture of the foot.

21. Plaintiff, Lenna Jean Rowe, is and was at all times alleged herein a citizen of the State of Missouri and currently resides in 616 Oak Lane, Mount Vernon, Missouri 65712 and brings this action in her individual capacity.

22. Plaintiff Lenna Jean Rowe purchased a pair of Skechers Shape-ups on or about August 30, 2010 from North Park Mall in Joplin, Missouri. Plaintiff began wearing these shoes

during her daily activities in Mt. Vernon, Missouri. On or about January 27, 2012, Lenna Jean Rowe was walking outdoors on a flat concrete walkway. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Aurora Hospital where medical testing demonstrated a fracture of the left leg as well a torn meniscus in her left knee.

23. Plaintiff, Angeline Ungerer, is and was at all times alleged herein a citizen of the State of Missouri and currently resides in 1217 R D Mize Rd., Grain Valley, Missouri 64029 and brings this action in her individual capacity.

24. Plaintiff Angeline Ungerer purchased a pair of Skechers Shape-ups on or about September 2010 from Shoe Carnival in Independence, Missouri. Plaintiff began wearing these shoes during her daily activities in Grain Valley, Missouri. On or about March 10, 2010, Angeline Ungerer was walking inside on a flat carpeted surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to St. Mary's Hospital Emergency Room where x-rays demonstrated a fracture of the ankle. Angeline Ungerer was also diagnosed with tendon damage of the ankle.

25. Plaintiff, Gina Yehle, is and was at all times alleged herein a citizen of the State of Missouri and currently resides in 638 Knierim Pl., Kirkwood, Missouri 63122 and brings this action in her individual capacity.

26. Plaintiff Gina Yehle purchased a pair of Skechers Shape-ups on or about December 2010 from Kohl's in St. Louis, Missouri. Plaintiff began wearing these shoes during her daily activities in Kirkwood, Missouri. After wearing her pair of Skechers Shape-ups, Gina Yehle began to notice excruciating pain in her right ankle beginning in or around October 2011.

When the pain did not subside, Plaintiff Gina Yehle presented for medical attention to Dr. Lehman. In February 2012, medical testing of Plaintiff's injury demonstrated torn ligaments and tendons of the right ankle as a result of her Skechers Shape-ups. Dr. Lehman informed Gina Yehle that she would require surgery to repair the injury.

27. Plaintiff, Nikisha Lenoir, is and was at all times alleged herein a citizen of the State of California and currently resides in 945 Taraval Street, San Francisco, California 94116 and brings this action in her individual capacity.

28. Plaintiff Nikisha Lenoir purchased a pair of Skechers Shape-ups on or about August 8, 2011 from the Skechers Store in San Francisco, California. Plaintiff began wearing these shoes during her daily activities in San Francisco, California. After wearing her Skechers Shape-ups, Nikisha Lenoir began experiencing pain in her foot, beginning in or about the beginning of 2012. When the pain did not subside, Plaintiff presented to Dr. Stone in or about May of 2012 for medical attention. Medical testing completed by her medical provider, Dr. Meltser, demonstrated that Plaintiff sustained a ruptured Achilles tendon as well as chronic tendonitis in her foot.

29. Plaintiff, Rosetta Fountaine, is and was at all times alleged herein a citizen of the State of California and currently resides in 1703 Topiary Drive Manteca, California 95337 and brings this action in her individual capacity.

30. Plaintiff Rosetta Fountaine purchased a pair of Skechers Shape-ups on or about May 3, 2010 from QVC in Westchester, Pennsylvania. Plaintiff began wearing these shoes during her daily activities in Manteca, California. After wearing her Skechers Shape-ups, Rosetta Fountaine began experiencing excruciating pain in her foot beginning on or about July 9, 2012.

When the pain did not subside, Plaintiff presented to her medical provider for medical attention. Medical testing completed by her medical provider demonstrated a stress fracture in her left foot.

31. Plaintiff, Ernie Fitz, is and was at all times alleged herein a citizen of the State of Montana and currently resides in P.O. Box 326, Browning, Montana 59417 and brings this action in his individual capacity.

32. Plaintiff Ernie Fitz purchased a pair of Skechers Shape-ups in or about October 2010 from Famous Footwear in Bozeman, Montana. Plaintiff began wearing these shoes during his daily activities in Browning, Montana. On or about January 26, 2012, Ernie Fitz was walking outside on a flat asphalt surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused his ankle to collapse causing him to fall on his right shoulder resulting in excruciating pain. On or about March 12, 2012, a MRI of Plaintiff Ernie Fitz's injury demonstrated a torn rotator cuff of the right arm.

33. Plaintiff, Pauline Mininger, is and was at all times alleged herein a citizen of the State of Montana and currently resides in 138 West Broad St., Drummond, Montana 59832 and brings this action in her individual capacity.

34. Plaintiff Pauline Mininger purchased a pair of Skechers Shape-ups on or about June 9, 2010 from Dillard's in Missoula, Montana. Plaintiff began wearing these shoes during her daily activities in Drummond, Montana. On or about September 26, 2011, Pauline Mininger was walking outside on a dirt covered surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her right ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to her medical provider where x-rays demonstrated a fracture of the left hip and a fracture of the femur.

35. Plaintiff, Elizabeth Terry, is and was at all times alleged herein a citizen of the State of Montana and currently resides in PO Box 791, Hamilton, Montana 59840 and brings this action in her individual capacity.

36. Plaintiff Elizabeth Terry purchased a pair of Skechers Shape-ups in December 2011 from Ford's in Hamilton, Nevada. Plaintiff began wearing these shoes during her daily activities in Corvallis, Montana. On April 8, 2012, Elizabeth Terry was walking outside down her porch stairs. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall down the stairs resulting in excruciating pain. Plaintiff presented to Marcus Daly Memorial Hospital where x-rays demonstrated a fracture of the ankle. Plaintiff also sustained an injury during the fall causing damage to her neck.

37. Plaintiff, Cindy Zeiger, is and was at all times alleged herein a citizen of the State of Montana and currently resides in P.O. Box 1115, Three Forks, Montana 59752 and brings this action in her individual capacity.

38. Plaintiff Cindy Zeiger purchased a pair of Skechers Shape-ups in or about March 2011 from a rummage sale at her church in Three Forks, Montana. Plaintiff began wearing these shoes during her daily activities in Three Forks, Montana. On or about June 20, 2011, Cindy Zeiger was walking outside on her flat driveway. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. On or about June 20, 2011, Plaintiff presented to Dr. Kristen Johnson for medical testing. X-rays demonstrated an avulsion fracture of the tibia.

39. Plaintiff, Tonya Addison, is and was at all times alleged herein a citizen of the State of North Carolina and currently resides in 164 S. Gregg St., Charlotte, North Carolina 28208 and brings this action in her individual capacity.

40. Plaintiff Tonya Addison purchased a pair of Skechers Shape-ups on or about December 2, 2010 in North Carolina. Plaintiff began wearing and using these shoes during her daily activities in Charlotte, North Carolina. On or about December 20, 2011, Plaintiff Tonya Addison was walking outdoors on a level paved surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her leg to collapse causing her to fall. Plaintiff presented to her medical provider in North Carolina where medical testing demonstrated a compound fracture of the right leg.

41. Plaintiff, Kimberly Bare, is and was at all times alleged herein a citizen of the State of North Carolina and currently resides in 142 Howard Black Road, Lexington, North Carolina 27292 and brings this action in her individual capacity.

42. Plaintiff Kimberly Bare purchased a pair of Skechers Shape-ups on or about February 11, 2011 from the online retail store, QVC. Plaintiff began wearing and using these shoes during her daily activities in Lexington, North Carolina. On or about March 2, 2012, Plaintiff Kimberly Bare was walking outdoors on a level paved surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her leg to collapse causing her to fall. Plaintiff presented to her medical provider in North Carolina where medical testing demonstrated a fracture of the ulna and radius fracture of the arm.

43. Plaintiff, Stephanie Chadwick, is and was at all times alleged herein a citizen of the State of North Carolina and currently resides in 1592 Overton Dr., Rocky Mountain, North Carolina 27810 and brings this action in her individual capacity.

44. Plaintiff Stephanie Chadwick purchased a pair of Skechers Shape-ups in or around September 2010 from the Golden East Mall in North Carolina. Plaintiff Ms. Chadwick began wearing and using these shoes during her daily activities in Rocky Mount, North Carolina. On or about October 5, 2011, Plaintiff Stephanie Chadwick was walking outdoors on a level paved surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her leg to collapse causing her to fall. Plaintiff presented to her medical provider in North Carolina where medical testing demonstrated a fracture to her left ankle.

45. Plaintiff, William Davis, is and was at all times alleged herein a citizen of the State of North Carolina and currently resides in 1716 2nd St. Salisbury, North Carolina 28144 and brings this action in his individual capacity.

46. Plaintiff William Davis purchased a pair of Skechers Shape-ups in or about February of 2011 Athletic Foot in Salisbury, North Carolina. Plaintiff began wearing these shoes during his daily activities in Salisbury, North Carolina. On or about October 9, 2011, William Davis was walking outside on a flat surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused his right ankle to collapse causing him to fall resulting in excruciating pain. Plaintiff presented to Rowan Medical Center Emergency Room where medical testing demonstrated fracture of the first metatarsal. Plaintiff was also diagnosed with plantar fasciitis.

47. Plaintiff, Theresa King, is and was at all times alleged herein a citizen of the State of North Carolina and currently resides in 1286 Old Clyde Road, Apt 1, Clyde, North Carolina 28721 and brings this action in her individual capacity.

48. Plaintiff Theresa King purchased a pair of Skechers Shape-ups in or about May of 2011 at Rack Room Shoes in Waynesville, North Carolina. Plaintiff began wearing these shoes

during her daily activities in Clyde, North Carolina. In or about February of 2012, Theresa King was walking outside on a flat surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her right ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Dr. Christian Moretz where medical testing demonstrated a tear of the meniscus.

49. Plaintiff, Margaret Parker, is and was at all times alleged herein a citizen of the State of North Carolina and currently resides in 105 Rock Creek Dr., Lincolnton, North Carolina 28092 and brings this action in her individual capacity.

50. Plaintiff Margaret Parker purchased a pair of Skechers Shape-ups on or about January 1, 2012 from a Skechers Shoe Store in Gaffney, South Carolina. Plaintiff began wearing these shoes during her daily activities in Lincolnton, North Carolina. In or about February of 2012, Margaret Parker was walking indoors on a flat surface in her bedroom. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Dr. John Masonis where medical testing demonstrated a torn ligament in her hip.

51. Plaintiff, Minnie Parker, is and was at all times alleged herein a citizen of the State of North Carolina and currently resides in 36401 NC HWY 903, Scotland Neck, North Carolina 27874 and brings this action in her individual capacity.

52. Plaintiff Minnie Parker purchased a pair of Skechers Shape-ups in or about July of 2009 from Shoe Show in Rocky Mountain, North Carolina. Plaintiff began wearing these shoes during her daily activities in Scotland Neck, North Carolina. In or about September of 2009, Plaintiff, Minnie Parker began to experience pain in her foot and ankle. When the pain did not subside, Plaintiff came under the care of Dr. Rosenthal at the Eastern Carolina Foot and

Ankle Specialists. Dr. Rosenthal performed medical tests on Plaintiff which demonstrated a metatarsal stress fracture in her ankle.

53. Plaintiff, Janie Sharpe, is and was at all times alleged herein a citizen of the State of North Carolina and currently resides in 4501 Greentree Road, Apt. C, Wilmington, North Carolina 28405 and brings this action in her individual capacity.

54. Plaintiff Janie Sharpe purchased a pair of Skechers Shape-ups in or about 2011 from Shoe Carnival in Wilmington, North Carolina. Plaintiff began wearing these shoes during her daily activities in Wilmington, North Carolina. On or about July 21, 2012, Janie Sharpe was walking outside on a flat surface in her driveway. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Dr. Jack Bowling Jr. for medical testing, which demonstrated a fractured wrist as a result of her fall while wearing Skechers Shape-ups.

55. Plaintiff, Mary Thompson, is and was at all times alleged herein a citizen of the State of North Carolina and currently resides in 5006 Stoney Pond Lane, Apt. K, Charlotte, North Carolina 28405 and brings this action in her individual capacity.

56. Plaintiff Mary Thompson purchased a pair of Skechers Shape-ups in or about January of 2011 from Skechers Outlet Store in Concord, North Carolina. Plaintiff began wearing these shoes during her daily activities in Charlotte, North Carolina.

57. On or about December 16, 2011, Mary Thompson was walking on a flat surface in a parking lot. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Carolina Medical Center where medical testing demonstrated a fractured ankle. Plaintiff was also diagnosed with torn tendons in her leg.

58. Plaintiff, Eleanor Smith, is and was at all times alleged herein a citizen of the State of New Jersey and currently resides in 215 Overbrook Dr., Freehold, New Jersey and brings this action in her individual capacity.

59. Plaintiff Eleanor Smith requested and received a pair of Skechers Shape-ups on or about December 25, 2009. Plaintiff began wearing these shoes during her daily activities in Freehold, New Jersey. On or about July 2011, Eleanor Smith was walking outside on a flat surface in her Skechers Shape-Ups. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to her medical provider where x-rays demonstrated fractured ribs. Eleanor Smith was also diagnosed with a blood clot of the left breast that she sustained during her fell into a ladder while wearing her Skechers Shape-ups.

60. Plaintiff, Elena Cruz, is and was at all times alleged herein a citizen of the State of New Mexico and currently resides in 101 Cedar St., Santa Fe, New Mexico 87501 and brings this action in her individual capacity.

61. Plaintiff Elena Cruz purchased a pair of Skechers Shape-ups on or about May 2011 from Ross in Santa Fe, New Mexico. Plaintiff began wearing these shoes during her daily activities in Santa Fe, New Mexico. On or about January 5, 2012, Plaintiff Elena Cruz was walking outside on a walking trail. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her right ankle to collapse causing her to fall resulting in excruciating pain. On or about January 6, 2012, Plaintiff presented to medical provider, Dr. Joel M. Wilnor for medical testing. Medical testing demonstrated a fracture of the ankle.

62. Plaintiff, Rubina Baros, is and was at all times alleged herein a citizen of the State of New Mexico and currently resides in 13000 Cloudview Ave NE, Albuquerque, New Mexico 87123 and brings this action in her individual capacity.

63. Plaintiff Rubina Baros purchased a pair of Skechers Shape-ups on or about April 2012 from the Skechers Store in Albuquerque, New Mexico. Plaintiff began wearing these shoes during her daily activities in Albuquerque, New Mexico. On or about May 21, 2012, Plaintiff Rubina Baros was walking inside on a flat tile surface of a hallway. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her right ankle to collapse causing her to fall resulting in excruciating pain in her right foot. Plaintiff presented to a medical provider for medical testing where x-rays demonstrated a calcaneus fracture of the right foot.

64. Plaintiff, Evangeline Cisneros, is and was at all times alleged herein a citizen of the State of New Mexico and currently resides in 1402 Chester Lane SW, Albuquerque, New Mexico 87105 and brings this action in her individual capacity.

65. Plaintiff Evangeline Cisneros purchased a pair of Skechers Shape-ups on or about May 2011 from Gizmos in Albuquerque, New Mexico. Plaintiff began wearing these shoes during her daily activities in Albuquerque, New Mexico. On or about September 19, 2011, Plaintiff Evangeline Cisneros was walking outside on a dirt surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her to left ankle collapse causing her to fall resulting in excruciating pain left ankle. Plaintiff presented to Dr. Corina Procell for medical attention where x-rays demonstrated a fracture of the left ankle as a result of her Skechers Shape-ups. Plaintiff was also diagnosed with damage to the right knee and left wrist.

66. Plaintiff, Hilda Hernandez, is and was at all times alleged herein a citizen of the State of New Mexico and currently resides in 804 E. 20th St., Silver City, New Mexico 88061 and brings this action in her individual capacity.

67. Plaintiff Hilda Hernandez requested and received a pair of Skechers Shape-ups on or about July 25, 2011. Plaintiff began wearing these shoes during her daily activities in Silver City, New Mexico. On or about November 4, 2011, Plaintiff Hilda Hernandez was walking outdoors on a flat surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to her medical provider where medical testing demonstrated a fracture of the ankle. Plaintiff was also diagnosed with a dislocated shoulder.

68. Plaintiff, Susan Snyder, is and was at all times alleged herein a citizen of the State of Oklahoma and currently resides in 1215 Meadow Lane, Bartlesville, Oklahoma 74006 and brings this action in her individual capacity.

69. Plaintiff Susan Snyder purchased a pair of Skechers Shape-ups in or about 2008 from Brown's Shoe Store in Bartlesville, Oklahoma. Plaintiff began wearing these shoes during her daily activities in Bartlesville, Oklahoma. In or about February 2010, Plaintiff Susan Snyder was walking outside down cement stairs. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her left ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff Susan Snyder presented to Jane Phillips Medical Center where x-rays demonstrated a fracture to the left ankle.

70. Plaintiff, Julie Corral, is and was at all times alleged herein a citizen of the State of Oklahoma and currently resides 1120 N. K Street, Muskogee, Oklahoma 74403 and brings this action in her individual capacity.

71. Plaintiff Julie Corral purchased a pair of Skechers Shape-ups in or about December 2009 from JC Penny in Muskogee, Oklahoma. Plaintiff began wearing these shoes during her daily activities Muskogee, Oklahoma. On or about February 2, 2010, Julie Corral was walking outside on a flat asphalt surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her left ankle to collapse causing her to fall landing on her left knee resulting in excruciating pain. Plaintiff Julie Corral presented to a hospital for medical attention, where she was diagnosed with a complete tear of the anterior cruciate ligament (ACL) as a result of her Skechers Shape-ups. Plaintiff was also diagnosed with a tibia contusion and knee joint effusion.

72. Plaintiff, Barbara Eubank, is and was at all times alleged herein a citizen of the State of Pennsylvania and currently resides 732 E. Goepp Street, Apt 218, Bethlehem, Pennsylvania and brings this action in her individual capacity.

73. Plaintiff Barbara Eubank requested and received a pair of Skechers Shape-ups on or about December 25, 2009 in Pennsylvania. Plaintiff Ms. Eubank began wearing and using these shoes during her daily activities in Bethlehem, Pennsylvania. On or about May 25, 2010 Plaintiff Barbara Eubank was walking outdoors on a level concrete surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her leg to collapse causing her to fall. Plaintiff presented to her healthcare provider in Pennsylvania where medical testing demonstrated a fracture of a bone in her foot.

74. Plaintiff, Jacqueline Santiago, is and was at all times alleged herein a citizen of the State of Pennsylvania and currently resides 176 Parkway Blvd., York, Pennsylvania 17404 and brings this action in her individual capacity.

75. Plaintiff Jacqueline Santiago purchased a pair of Skechers Shape-ups in or around January of 2009 from a store in Bayanox, Puerto Rico. Plaintiff began wearing and using these shoes during her daily activities in York, Pennsylvania. On or about August 7, 2009 Plaintiff Jacqueline Santiago was walking outdoors on a level cement surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her leg to collapse causing her to fall. Plaintiff presented to her healthcare provider in Pennsylvania where medical testing demonstrated a tear of the lateral meniscus of the right knee.

76. Plaintiff Stacy Weiberth is and was at all times alleged herein a citizen of the State of Pennsylvania and currently resides at 960 Ridge St., Freeland, Pennsylvania 18224 and brings this action in her individual capacity.

77. Plaintiff Stacy Weiberth purchased a pair of Skechers Shape-ups in or around July of 2011 from the Footlocker in Hazleton, Pennsylvania. Plaintiff began wearing and using these shoes during her daily activities in Fountain Freeland, Pennsylvania. On or about August 12, 2012. Plaintiff Stacy Weiberth was walking outdoors on a level cement surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her leg to collapse causing her to fall. Plaintiff presented to her healthcare provider in Pennsylvania where medical testing demonstrated a torn pelvic tendon.

78. Plaintiff Vonda Cox is and was at all times alleged herein a citizen of the State of Tennessee and currently resides at 5225 Chisolm Lake Rd., Ripley, Tennessee 38063 and brings this action in her individual capacity.

79. Plaintiff Vonda Cox requested and received a pair of Skechers Shape-ups in or about July of 2011 from a shopping catalog. Plaintiff began wearing these shoes during her daily activities in Ripley, Tennessee. On or about September 6, 2011, Vonda Cox was walking outside

on a flat, dirt surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Mid-South Orthopedic Hospital where medical testing demonstrated multiple fractures of the left ankle.

80. Plaintiff Denise Perkins is and was at all times alleged herein a citizen of the State of Tennessee and currently resides at 4505 Millertown Pike, Knoxville, Tennessee 37917 and brings this action in her individual capacity.

81. Plaintiff Denise Perkins purchased a pair of Skechers Shape-ups in or about February of 2010 from Kohl's in Knoxville, Tennessee. Plaintiff began wearing these shoes during her daily activities in Knoxville, Tennessee. In or about May of 2010, Denise Perkins was walking outdoors on a sidewalk on a flat, cement surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to her medical provider where medical testing demonstrated a fractured ankle Plaintiff was also diagnosed with significant damage to her foot.

82. Plaintiff Dorothy Francis is and was at all times alleged herein a citizen of the State of Texas and currently resides at 2913 Farrell Lane, Fort Worth, Texas 76119 and brings this action in her individual capacity.

83. Plaintiff Dorothy Francis purchased a pair of Skechers Shape-ups in or about April 2009. Plaintiff began wearing these shoes during her daily activities in Fort Worth, Texas. On or about January 1, 2010, Plaintiff Dorothy Francis was walking outdoors on a level cement surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and

caused her leg to collapse causing her to fall. Plaintiff presented to her healthcare provider in Texas where medical testing demonstrated ligament damage to her knees.

84. Plaintiff Stephanie Hargrove is and was at all times alleged herein a citizen of the State of Texas and currently resides at P.O. Box 1175, Victoria, Texas 77902 and brings this action in her individual capacity.

85. Plaintiff Stephanie Hargrove purchased a pair of Skechers Shape-ups in or about April of 2009 at Kohl's. After wearing the shoes for 25-45 minute period for two weeks after purchase, Plaintiff began wearing these shoes during her daily activities in Texas. On or about November 7, 2010, Plaintiff Stephanie Hargrove was walking outdoors on a level grass surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her right ankle to collapse causing her to fall. Plaintiff presented to her healthcare provider in Texas where medical testing demonstrated a fracture of the right ankle.

86. Plaintiff Judy Gardner is and was at all times alleged herein a citizen of the State of Texas and currently resides at P.O. Box 1121, Boerne, Texas 78006 and brings this action in her individual capacity.

87. Plaintiff Judy Gardner purchased a pair of Skechers Shape-ups in or about September 10, 2010 from Macy's in Austin, Texas. Plaintiff began wearing these shoes during her daily activities in Fredericksburg, Texas. On or about October 14, 2010, Judy Gardner was walking outside on an asphalt, flat surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her right ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Madison St. Joseph Health Center Emergency Room where x-rays demonstrated a fracture of the foot.

88. Plaintiff Claudette Moffet is and was at all times alleged herein a citizen of the State of Washington and currently resides at 4001 S. Kent Street, Kennewick, Washington 99337 and brings this action in her individual capacity.

89. Plaintiff Claudette Moffet purchased a pair of Skechers Shape-ups in or about 2010 from Fred Myer's in Burlington, Washington. Plaintiff began wearing these shoes during her daily activities in Kennewick, Washington. In or about November of 2011, Claudette Moffet was walking outdoors on a flat surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Kennewick General Hospital Emergency Room where medical testing demonstrated a fracture of the right knee.

90. Plaintiff Loretta Ammons is and was at all times alleged herein a citizen of the State of Washington and currently resides at 11243 Smokehouse Rd., La Conner, Washington 98257 and brings this action in her individual capacity.

91. Plaintiff Loretta Ammons purchased a pair of Skechers Shape-ups in or about 2010 from Macy's in Burlington, Washington. Plaintiff began wearing these shoes during her daily activities in Washington. On or about March 10, 2012, Loretta Ammons was walking on a flat at her place of employment. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her right ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to United General Hospital where medical testing demonstrated a torn meniscus.

92. Plaintiff Rebeckah Axelsen is and was at all times alleged herein a citizen of the State of Washington and currently resides at PO Box 1293, Westport, Washington 98595 and brings this action in her individual capacity.

93. Plaintiff Rebeckah Axelsen purchased a pair of Skechers Shape-ups in or about December of 2010 from Famous Footwear in Bellingham, Washington. Plaintiff began wearing these shoes during her daily activities in Westport, Washington. On or about May 11, 2012, Rebeckah Axelsen, started having pain in her right ankle. Plaintiff then came under the care of Dr. Robert Hovancsek, who ordered medical testing on Plaintiff's right ankle. Medical testing demonstrated a torn Achilles tendon of the right ankle.

94. Plaintiff Pearl Brown is and was at all times alleged herein a citizen of the State of Washington and currently resides at 3528 E Broad Avenue, Box 13, Spokane, Washington 99217 and brings this action in her individual capacity.

95. Plaintiff Pearl Brown purchased a pair of Skechers Shape-ups in or about January of 2012 through an online purchase. Plaintiff began wearing these shoes during her daily activities in Spokane, Washington. On or about April 18, 2012, Plaintiff Pearl Brown was walking outdoors on flat concrete steps. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Holy Family Hospital where medical testing demonstrated a fracture of the left ankle.

96. Plaintiff Rene Collins is and was at all times alleged herein a citizen of the State of Washington and currently resides at 1863 NW Vaa Road, Poulsbo, Washington 98370 and brings this action in her individual capacity.

97. Plaintiff Rene Collins purchased a pair of Skechers Shape-ups in or about January of 2012 in Seattle, Washington. Plaintiff began wearing these shoes during her daily activities in Poulsbo, Washington. On or about March 7, 2012, Rene Collins was walking indoors on a flat surface of stairs in her home. Suddenly and without warning, Skechers Shape-ups toning shoe

pronated inward and caused her right to collapse causing her to fall down the stairs resulting in excruciating pain. Plaintiff presented to Harborview Medical Center where medical testing demonstrated a fracture of the left arm and a compound fracture of the right leg. Plaintiff was also diagnosed with a dislocated left hip as a result of her fall while wearing Skechers Shape-ups.

98. Plaintiff Janet Harris is and was at all times alleged herein a citizen of the State of Washington and currently resides at 902 31st. Ave. Seattle, Washington 98122 and brings this action in her individual capacity.

99. Plaintiff Janet Harris purchased a pair of Skechers Shape-ups in or about April of 2012 from Finish Line in Seattle, Washington. Plaintiff began wearing these shoes during her daily activities in Seattle, Washington. In or about August of 2012, Janet Harris was walking outdoors on a flat, concrete surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Harborview Medical Center where medical testing demonstrated a fracture of the right foot. Plaintiff was also diagnosed with a fractured third toe on her right foot.

100. Plaintiff Olivia Smolen is and was at all times alleged herein a citizen of the State of Washington and currently resides at 657 South West McCrohan Street, Oak Harbor, Washington 98277 and brings this action in her individual capacity.

101. Plaintiff Olivia Smolen purchased a pair of Skechers Shape-ups in or about 2009 in Oak Harbor, Washington. Plaintiff began wearing these shoes during her daily activities in Oak Harbor, Washington. On or about July 17, 2011, Olivia Smolen was walking on a flat, concrete surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain.

Plaintiff presented for medical attention as a result of the chest contusion suffered when she fell in her Skechers Shape-ups. On or about November 21, 2011, Olivia Smolen was walking down flat, concrete stairs. Suddenly and without warning, Skechers Shape-up toning shoes pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Whidbey General Hospital Emergency Room where medical testing demonstrated a torn meniscus of the right knee.

102. Plaintiff Joan Thomas is and was at all times alleged herein a citizen of the State of Washington and currently resides at 2901 3rd Street, Yakima, Washington 98903 and brings this action in her individual capacity.

103. Plaintiff Joan Thomas purchased a pair of Skechers Shape-ups in or about March of 2011 from Sears in Union Gap, Washington. Plaintiff began wearing these shoes during her daily activities in Union Gap, Washington. On or about December 21, 2012, Joan Thomas was walking indoors on a flat surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Memorial Hospital Emergency Room where medical testing demonstrated a fracture of the ankle.

104. Plaintiff Kyeshia Ammons is and was at all times alleged herein a citizen of the State of Michigan and currently resides at 17233 Fielding Street, Detroit, Michigan 48219 and brings this action in her individual capacity.

105. Plaintiff Kyeshia Ammons purchased a pair of Skechers Shape-ups in or about October of 2009 at Kohl's in Westland, Michigan. Plaintiff began wearing these shoes during her daily activities in Detroit, Michigan. In or about January of 2011, Kyeshia Ammons was on a flat concrete surface in her home. Suddenly and without warning, Skechers Shape-ups toning shoe

pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to her medical provider for medical testing which demonstrated a fracture of the toe of her left foot. Plaintiff was also diagnosed with a heel spur in the left foot and a heel spur in the right foot as a result of the fall while wearing Skechers Shape-ups.

106. Plaintiff Darrin Cartwright is and was at all times alleged herein a citizen of the State of Michigan and currently resides at 18210 Prairie St., Detroit, Michigan 48221 and brings this action in his individual capacity.

107. Plaintiff Darrin Cartwright purchased a pair of Skechers Shape-ups on or about February of 2012 from Famous Footwear in Warren, Michigan. Plaintiff began wearing these shoes during his daily activities in Detroit, Michigan. On or about July 24, 2012, Darrin Cartwright was walking on a flat surface in her garden. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused his ankle to collapse causing him to fall resulting in excruciating pain. Plaintiff presented to St. John's Hospital where medical testing demonstrated a fracture of the left knee as a result of the fall.

108. Plaintiff Kleopatra Fero is and was at all times alleged herein a citizen of the State of Michigan and currently resides at PO Box 3541, Highland Park, Michigan 48208 and brings this action in her individual capacity.

109. Plaintiff Kleopatra Fero purchased a pair of Skechers Shape-ups in or about January of 2011 from Galbraitor in Taylor, Michigan. Plaintiff began wearing these shoes during her daily activities in Detroit, Michigan. On or about December 7, 2012, Plaintiff Kleopatra Fero was walking on a flat concrete surface in her home. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to a medical provider where medical testing

demonstrated a fracture of her toe on her left foot. Plaintiff also sustained severe head trauma as a result of her fall.

110. Plaintiff Pamela Green is and was at all times alleged herein a citizen of the State of Michigan and currently resides at 5521 Taube Rd., Coloma, Michigan 49038 and brings this action in her individual capacity.

111. Plaintiff Pamela Green purchased a pair of Skechers Shape-ups in September of 2010 from JC Penney's in Benton Harbor, Michigan. Plaintiff began wearing these shoes during her daily activities in Coloma, Michigan. On or about August 25, 2011, Pamela Green was walking up a flat wooden staircase. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall down stairs resulting in excruciating pain. Plaintiff presented to her medical provider for medical testing which demonstrated fractures of the right leg and of the left leg.

112. Plaintiff Deborah Helbig is and was at all times alleged herein a citizen of the State of Michigan and currently resides at 44 N. Clark Rd., Apt. 109, Battle Creek, Michigan 49037 and brings this action in her individual capacity.

113. Plaintiff Deborah Helbig purchased a pair of Skechers Shape-ups on or about July 29, 2011 from Canteen of Battle Creek Veterans Affairs Medical Center. Plaintiff began wearing these shoes during her daily activities in Battle Creek, Michigan. On or about February 13, 2012, Deborah Helbig was walking on a flat asphalt surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to a medical provider for medical testing which demonstrated three fractures of the right ankle.

114. Plaintiff Dawn Hughes is and was at all times alleged herein a citizen of the State of Michigan and currently resides at 3711 Dakota Avenue, Flint, Michigan 48506 and brings this action in her individual capacity.

115. Plaintiff Dawn Hughes purchased a pair of Skechers Shape-ups in or about November of 2010 from Kohl's in Grand Blanc, Michigan. Plaintiff began wearing these shoes during her daily activities in Flint, Michigan. In or about February of 2010, Dawn Hughes was walking on a flat surface in her home. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her right ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to a medical provider for medical testing which demonstrated a fracture of the right foot as a result of her fall.

116. Plaintiff Diann Nugent is and was at all times alleged herein a citizen of the State of Michigan and currently resides at 2015 W. Jolly Road, Lansing, Michigan 48910 and brings this action in her individual capacity.

117. Plaintiff Diann Nugent purchased two pairs of Skechers Shape-ups in or about February of 2010 from a Famous Footwear in Michigan. Plaintiff began wearing these shoes during her daily activities in Michigan. On or about May 2011, Plaintiff Diann Nugent was walking outdoors on a level cement surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her leg to collapse causing her to fall. Plaintiff presented to her medical provider in Michigan for medical testing which demonstrated torn tendons of her knee.

118. Plaintiff Tammy Smither is and was at all times alleged herein a citizen of the State of Michigan and currently resides at 127 Shiawassee River Dr., Adrian, Michigan 49221 and brings this action in her individual capacity.

119. Plaintiff Tammy Smither purchased a pair of Skechers Shape-ups on May of 2011 from a JC Penney store in Michigan. Plaintiff began wearing these shoes during her daily activities in Michigan. On or about October 9, 2011, Plaintiff Tammy Smither was walking indoors on a level linoleum surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her leg to collapse causing her to fall. Plaintiff presented to her medical provider in Michigan for medical testing which demonstrated a torn ligament of the left ankle.

120. Plaintiff Gloria Stevens is and was at all times alleged herein a citizen of the State of Michigan and currently resides at 161 Jones St., Mount Clemens, Michigan 48043 and brings this action in her individual capacity.

121. Plaintiff Gloria Stevens purchased a pair of Skechers Shape-ups in or about March of 2011 from JC Penney in Chesterfield, Michigan. Plaintiff began wearing these shoes during her daily activities in Mount, Clemens, Michigan. On or about April 2011, Plaintiff Gloria Stevens was walking outdoors on a level cement surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her leg to collapse causing her to fall. Plaintiff presented to her medical provider for medical testing which demonstrated damaged cartilage of the right knee and left knee.

122. Plaintiff Lenika Beaulieu is and was at all times alleged herein a citizen of the State of Minnesota and currently resides at 1000 Leo Avenue, Ruthon, Minnesota 56170 and brings this action in her individual capacity.

123. Plaintiff Lenika Beaulieu purchased a pair of Skechers Shape-ups in or about May 2010 from Empire Mall in Sioux Falls, South Dakota. Plaintiff began wearing these shoes during her daily activities in Ruthon, Minnesota. On or about August 2010, Lenika Beaulieu was

walking outside on a flat paved surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her left ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to her medical provider where a MRI demonstrated a torn meniscus of the left knee.

124. Plaintiff Emard Croston is and was at all times alleged herein a citizen of the State of Minnesota and currently resides at 14785 Carriage Ct. NE, Prior Lake, Minnesota 55372 and brings this action in his individual capacity.

125. Plaintiff Emard Croston purchased a pair of Skechers Shape-ups on or about November 25, 2011 from a Skechers store in Bloomington, Minnesota. Plaintiff began wearing these shoes during his daily activities in Prior Lake, Minnesota. On or about August 21, 2012, Emard Croston was walking indoors on a flat carpeted surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her right ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to TRIA Orthopedic Center where x-rays demonstrated a fracture of the fifth metatarsal.

126. Plaintiff Diane Hanson is and was at all times alleged herein a citizen of the State of Minnesota and currently resides at 442 N. Pine Ave., Owatonna, Minnesota 55060 and brings this action in her individual capacity.

127. Plaintiff Diane Hanson purchased a pair of Skechers Shape-ups on or about August 15, 2011 from Herbergers in Albert Lea, Minnesota. Plaintiff began wearing these shoes during her daily activities in Owatonna, Minnesota. Beginning on or about January 2012, Diane Hanson began feeling pain in her left knee after consistently and frequently wearing her Skechers Shape-ups for approximately four months. When the pain did not subside, Plaintiff presented to

her medical provider for medical testing which demonstrated a torn meniscus of the left knee as a result of her Skechers Shape-ups.

128. Plaintiff Katherine Heald is and was at all times alleged herein a citizen of the State of Minnesota and currently resides at 8354 140th Street, Apple Valley Minnesota 55124 and brings this action in her individual capacity.

129. Plaintiff Katherine Heald purchased a pair of Skechers Shape-ups on or about June 26, 2010 from Cerny Shoes in Lakewood, Minnesota. Plaintiff began wearing these shoes during her daily activities in Apple Valley, Minnesota. On or about October 2010, Katherine Heald was walking outside on a flat cement surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her leg to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to her medical provider for x-rays which demonstrated a knee injury requiring a total knee replacement surgery. She was also diagnosed with rapid acceleration of osteoarthritis of the right knee.

130. Plaintiff Denice Maciej is and was at all times alleged herein a citizen of the State of Minnesota and currently resides at 34 Larch Dr., Duluth, Minnesota 55810 and brings this action in her individual capacity.

131. Plaintiff Denice Maciej purchased a pair of Skechers Shape-ups on or about March 2010 from Kohl's in Duluth, Minnesota. Plaintiff began wearing these shoes during her daily activities in Duluth, Minnesota. On or about May 19, 2010, Denice Maciej was walking on a flat surface in her garden. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her right ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to St. Mary's Medical Center Emergency Room where x-

rays demonstrated a fracture of the thumb. Plaintiff was informed by her medical provider that the fracture required surgery to repair.

132. Plaintiff Doretha Simpson is and was at all times alleged herein a citizen of the State of Minnesota and currently resides at 73 Rose Ave. East, Saint Paul, Minnesota 55117 and brings this action in her individual capacity.

133. Plaintiff Doretha Simpson purchased a pair of Skechers Shape-ups on or about May 2010 from Sears in St. Paul, Minnesota. Plaintiff began wearing these shoes during her daily activities in St. Paul, Minnesota. On or about April 5, 2012, Doretha Simpson was walking inside down a carpeted staircase. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her left ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to medical provider, Dr. Jon B. Cole who ordered medical testing of Plaintiff's injury. X-rays of Plaintiff's injury demonstrated fractures of the left foot.

134. Plaintiff Theresa Jones is and was at all times alleged herein a citizen of the State of Minnesota and currently resides at 150 Hoawatha Avenue West, Big Lake, Minnesota 55309 and brings this action in her individual capacity.

135. Plaintiff Theresa Jones purchased a pair of Skechers Shape-ups on or about December 13, 2009 from the Skechers Store in Albertville, Minnesota. Plaintiff began wearing these shoes during her daily activities in Big Lake, Minnesota. Beginning on or about February 2, 2012, began to feel excruciating pain in her knee as a result of wearing her Skechers Shape-ups. The pain continued to worsen. On or about February 22, 2012, Plaintiff presented to Allina Medical Clinic where Dr. Dana Harms ordered medical testing which demonstrated a tear of the meniscus sustained as a result of wearing her Skechers Shape-ups.

136. Plaintiff Elise Sanders is and was at all times alleged herein a citizen of the State of Kentucky and currently resides at 506 East Chestnut Street, Nicholasville, Kentucky 40356 and brings this action in her individual capacity.

137. Plaintiff Elise Sanders purchased a pair of Skechers Shape-ups in or about October in 2009 at TJ Maxx in Lexington, Kentucky. Plaintiff began wearing these shoes during her daily activities in Nicholasville, Kentucky. In or about August of 2009, Elise Sanders was walking inside on a flat surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to a medical provider for medical testing which demonstrated a ruptured Achilles tendon and torn ligaments in her foot as a result of the fall.

138. Plaintiff, Angela Sharp, is and was at all times alleged herein a citizen of the State of Kentucky and currently resides at 4405 Olive Hamlet Rd. Benton, Kentucky 42025 and brings this action in her individual capacity.

139. Plaintiff Angela Sharp purchased a pair of Skechers Shape-ups in or about 2011 at Shoe Carnival in Paducah, Kentucky. Plaintiff began wearing these shoes during her daily activities in Benton, Kentucky. On or about June 6, 2011, Angela Sharp was walking on a flat surface on her front porch. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her right to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to her medical provider for medical testing which demonstrated a fractured right tibia and a fracture of the ankle.

140. Plaintiff, Jay Blank, is and was at all times alleged herein a citizen of the State of Florida and currently resides at 131 Belmont Rd., Tallahassee, Florida 32301 and brings this action in his individual capacity.

141. Plaintiff Jay Blank purchased a pair of Skechers Shape-ups in or about 2009 from Shoe Station in Tallahassee, Florida. Plaintiff began wearing these shoes during his daily activities in Tallahassee, Florida

142. On or about May 18, 2014, Plaintiff Jay Blank was walking up flat, concrete stairs. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused his ankle to collapse causing him to fall resulting in excruciating pain. Plaintiff presented to Capital Regional Medical Center where medical testing demonstrated fragmented vertebrae. Medical testing also demonstrated a torn meniscus.

143. Plaintiff, Amy Cope, is and was at all times alleged herein a citizen of the State of Florida and currently resides at 1201 Baltic Dr., Kissimmee, Florida 34759 and brings this action in her individual capacity.

144. Plaintiff Amy Cope asked for and received a pair of Skechers Shape-ups in or about August of 2010 in Orlando, Florida. Plaintiff began wearing these shoes during her daily activities in Poinciana, Florida. On or about October 23, 2010, Amy Cope was walking on a flat, asphalt surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to her medical provider where medical testing demonstrated a fracture of the left ankle.

145. Plaintiff, Harold Evans, is and was at all times alleged herein a citizen of the State of Florida and currently resides at 2375 Osprey Drive, Gulf Breeze, Florida 32563 and brings this action in his individual capacity.

146. Plaintiff Harold Evans purchased a pair of Skechers Shape-ups in or about 2010 from a Skechers outlet store in Destin, Florida. Plaintiff began wearing these shoes during his daily activities in Gulf Breeze, Florida. In or about August of 2010, Plaintiff Harold Evans began

to experience excruciating pain in his foot after wearing his Skechers Shape-ups. When the pain did not subside, Plaintiff presented to his medical provider where medical tests demonstrated a stress fracture in his foot. Plaintiff was also diagnosed with bone spurs and plantar fasciitis as a result of his Skechers Shape-ups.

147. Plaintiff, Marie Galette, is and was at all times alleged herein a citizen of the State of Florida and currently resides at 2210 Marsh View Dr., #202, Wesley Chapel, Florida 33544 and brings this action in her individual capacity.

148. Plaintiff Marie Galette purchased a pair of Skechers Shape-ups on or about August 27, 2009 From Macy's in Wellington, Florida. Plaintiff began wearing these shoes during her daily activities in Wesley Chapel, Florida. In or about August of 2010, Plaintiff Marie Galette was walking outdoors on a flat, concrete surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Dr. Jon Paul Fritz where medical tests demonstrated a fractured ankle and ligament damage in her ankle.

149. Plaintiff, Patricia Kalavsky, is and was at all times alleged herein a citizen of the State of Florida and currently resides at 4551 E. View Top Lane, Inverness, Florida 34452 and brings this action in her individual capacity.

150. Plaintiff Patricia Kalavsky purchased a pair of Skechers Shape-ups in or about 2010 from Bealls in Brooksville, Florida. Plaintiff began wearing these shoes during her daily activities in Inverness, Florida. In or about July of 2010, Plaintiff Patricia Kalavsky, began to experience excruciating pain in her left foot as a result of her Skechers Shape-ups. When the pain did not subside, Plaintiff came under the care of Dr. Maria Gregory. Plaintiff then presented to Shands Hospital where an MRI demonstrated a stress fracture of her left foot.

151. Plaintiff, Jacqueline King, is and was at all times alleged herein a citizen of the State of Florida and currently resides at 1709 NW 27th Ave., Ocala, Florida 34475 and brings this action in her individual capacity.

152. Plaintiff Jacqueline King asked for and received a pair of Skechers Shape-ups in or about August of 2010 from Shoe Rack in Ocala, Florida. Plaintiff began wearing these shoes during her daily activities in Ocala, Florida. On or about June of 2013, Plaintiff Jacqueline King was walking outdoors on a flat surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Dr. Christopher Fleming where medical tests demonstrated a torn tendon in her left foot.

153. Plaintiff, Henry Patterson, is and was at all times alleged herein a citizen of the State of Florida and currently resides at 8699 Anchorage Dr., Miramar Beach, Florida 32550 and brings this action in his individual capacity.

154. Plaintiff Henry Patterson purchased a pair of Skechers Shape-ups in or about June of 2010 from a Skechers Store in Santa Rosa Beach, Florida. Plaintiff began wearing these shoes during his daily activities in Miramar Beach, Florida. On or about September 17, 2010, Plaintiff Henry Patterson was walking outdoors on a flat surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused his ankle to collapse causing him to fall resulting in excruciating pain. Plaintiff presented to Dr. Robert Hamilton where medical tests demonstrated a ruptured patella tendon.

155. Plaintiff, Sally Succi, is and was at all times alleged herein a citizen of the State of Florida and currently resides at 3577 Harrier Ct., Middleburg, Florida 32068 and brings this action in her individual capacity.

156. Plaintiff Sally Succi asked for and received a pair of Skechers Shape-ups in or about December of 2010 from Kohl's in Jacksonville, Florida. Plaintiff began wearing these shoes during her daily activities in Middleburg, Florida. In or about January of 2011, Plaintiff Sally Succi was walking outdoors on a flat, concrete surface. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to Orange Park Medical Center where a CT scan demonstrated a fractured nose. Plaintiff was also diagnosed with facial hematomas as a result of her injury sustained while wearing her Skechers Shape-ups.

157. Plaintiff, Sharon Thompson, is and was at all times alleged herein a citizen of the State of Florida and currently resides at 90 Hal Street, Niceville, Florida 32578 and brings this action in her individual capacity.

158. Plaintiff Sharon Thompson asked for and received a pair of Skechers Shape-ups on or about December 25, 2011 from Hibbits Sports in Niceville, Florida. Plaintiff began wearing these shoes during her daily activities in Niceville, Florida. On or about September 21, 2012, Sharon Thompson, was walking on a flat, concrete surface. Suddenly and without warning. Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to her medical provider where medical tests demonstrated a fractured right foot. On or about January 30, 2013, Sharon Thompson, was walking inside on a flat surface. Suddenly and without warning. Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to her medical provider where medical tests demonstrated multiple fractured toes. On or about March 18, 2013, Sharon Thompson, was walking indoors on a flat surface. Suddenly and without warning. Skechers Shape-ups toning shoe pronated inward and

caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to her medical provider where medical tests demonstrated a fractured left wrist. On or about June 21, 2013, Sharon Thompson, was walking indoors on a flat surface. Suddenly and without warning. Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to her medical provider where medical tests demonstrated a fractured right wrist. On or about December 8, 2013, Sharon Thompson, was walking on a flat, concrete surface. Suddenly and without warning. Skechers Shape-ups toning shoe pronated inward and caused her ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to her medical provider where medical tests demonstrated several fracture ribs.

159. Plaintiff, Lisa Cryder is presently a citizen of the State of Arizona and currently resides at 6099 E. Rough Rock Dr., Tucson, Arizona 85756 and brings this action in her individual capacity. However, Plaintiff's Skechers related injury occurred in the State of Florida.

160. Plaintiff Lisa Cryder purchased a pair of Skechers Shape-ups in or about October of 2010 from Shoe City in Pensacola, Florida. Plaintiff began wearing these shoes during her daily activities in Pensacola, Florida. On or about November 26, 2010, Lisa Cryder was walking on a flat surface in a parking lot Pensacola, Florida. Suddenly and without warning, Skechers Shape-ups toning shoe pronated inward and caused her left ankle to collapse causing her to fall resulting in excruciating pain. Plaintiff presented to West Florida Hospital where x-rays demonstrated a fracture of the left ankle as a result of her fall while wearing Skechers Shape-Ups.

161. Plaintiffs Linda Nichols, Donal Lee, Theresa Nixon, Lenna Jean Rowe, Angeline

Ungerer, Gina Yehle, Nikisha Lenoir, Rosetta Fountaine, Ernie Fitz, Pauline Mininger, Elizabeth Terry, Cindy Zeiger, Tonya Addison, Kimberly Bare, Stephanie Chadwick, William Davis, Theresa King, Margaret Parker, Minnie Parker, Janie Sharpe, Mary Thompson, Eleanor Smith, Elena Cruz, Rubina Baros, Evangeline Cisneros, Hilda Hernandez, Susan Snyder, Julie Corral, Barbara Eubank, Jacqueline Santiago, Stacy Weiberth, Vonda Cox, Denise Perkins, Dorothy Francis, Stephanie Hargrove, Judy Gardner, Claudette Moffet, Loretta Ammons, Rebeckah Axelsen, Pearl Brown, Rene Collins, Janet Harris, Olivia Smolen, Joan Thomas, Kyeshia Ammons, Darrin Cartwright, Kleopatra Fero, Pamela Green, Deborah Helbig, Dawn Hughes, Diann Nugent, Tammy Smither, Gloria Stevens, Lenika Beaulieu, Emard Croston, Diane Hanson, Katherine Heald, Denice Maciej, Doretha Simpson, Theresa Jones, Elise Sanders, Angela Sharp, Jay Blank, Amy Cope, Harold Evans, Marie Galette, Patricia Kalavsky, Jacqueline King, Henry Patterson, Sally Succi, Sharon Thompson, and Lisa Cryder shall herein be collectively referred to as "Plaintiffs."

162. Plaintiffs did not file lawsuits or otherwise investigate or pursue a claim concerning Plaintiffs' individual use of Skechers Shape-ups or Tone-ups because Skechers' acts and omissions, as set forth in this Complaint, served to conceal the product defects from Plaintiffs. For these reasons, the statute of limitations as to Plaintiffs' claims were tolled until Plaintiffs became aware of the wrongful acts of Skechers when information concerning these wrongful acts became public starting with the FTC warning discussed above as well as subsequent publicity, including, *inter alia*, advertising by attorneys concerning potential legal claims related to Skechers Shape-ups and Tone-ups. These advertisements informed Plaintiffs for the first time that the instability and other traits of the Shape-ups or Tone-ups were not natural, or to be expected, and may have been the cause of Plaintiffs' individual injuries.

163. Upon information and belief all of Plaintiffs' injuries, and the mechanism by which each Plaintiff fell and/or was injured, as set forth in the preceding paragraphs were directly and proximately caused by each Plaintiff's respective use of Skechers Shape-ups.

164. The medical treatment and injuries described above are not necessarily a full and complete description of each Plaintiff's injuries, as each Plaintiff may have or did incur further treatment and injuries not specifically set forth herein.

## FACTUAL BACKGROUND

165. Skechers is a shoe company that manufactures toning shoes, including Skechers Shape-ups and Tone-ups. These shoes have a pronounced rocker bottom sole. Skechers markets and promotes its toning shoes as footwear that will provide countless health benefits including improved cardiac function and orthopedic benefits. It markets and promotes its toning shoes to be worn in place of other athletic shoes during daily activities, exercise routines, and in the workplace. Skechers Shape-ups' slogans include the following: "Shape Up While You Walk" and "Shape Up While You Work."

166. Skechers intentionally designs its toning shoes to create instability and to change gait mechanics. It is well established in the medical literature, however, that changing one's gait can and does cause chronic injuries. Such injuries include stress fractures, joint injuries, and tendon and ligament injuries. Moreover, shoes that create instability can and do cause people wearing them to fall. Despite this existing body of literature and numerous complaints to the company about chronic and traumatic injuries, Skechers has and continues to market and promote this footwear without performing any safety testing.

167. Defendants marketed the "Shape-Ups" through an extensive advertising campaign consisting of television and print advertisements. The plaintiffs in these actions saw the advertisements and believed the representations to be true and therefore either purchased the

shoes or received them as gifts. The "Shape-Ups" shoes were designed in one place. (*See* Ex. 1, Defendant Skechers U.S.A., Inc.'s Initial Disclosures Pursuant to Rule 26(a)(1)(A) in *Grabowski, et al. v. Skechers U.S.A. Inc.)*. All matters of proof lie in a single place. A large number of the officers and employees of defendants or other individuals involved in the design of the shoes are in one place. *Id.* All documents relating to the design and development of the shoes are located in one place. *Id.* All documents regarding scientific studies in regard to the purported benefits of the technology utilized for the shoes are located in one place. *Id.* All documents regarding the manufacture and testing of the shoes are in one place. *Id.* All the advertising for the shoes emanated from one place. *Id.* All the individuals involved in creating and approving the advertising campaign are in one place. *Id.* All documents relating to the market research of the shoes are located in one place. *Id.* Additionally, all documents regarding the pricing structure and business plans for the defendants are located in one place. *Id.* The advertisements and marketing materials relied on by the plaintiffs in deciding to purchase and wear the Skechers shoes originated, were approved, and were disseminated from the defendants' headquarters, and therefore the defendants are liable under the CLRA and UCL for directing these false and misleading materials from their headquarters to other state residents."

168. Skechers made numerous misrepresentations, and continues to make such representations, regarding the efficacy and health benefits of Shape-ups. For example, on Shape-ups packaging, the company advertises that the shoes were "Designed to help: burn more calories, tone muscles, and improve posture." The packaging also contains statements that Shape-ups allow the consumer to "Get in Shape Without Setting Foot in a Gym." Additionally, the cover of a pamphlet that accompanied the Shape-ups promised that the uses of the shoes: improves posture, strengthens the back, firms buttocks muscles, tones and firms thigh muscles,

firms calf muscles, improves blood circulation, tightens abdominal muscles, and reduces knee joint stress.

169. Skechers also used various celebrities to push its Shape-ups, including Kim Kardashian, Karl Malone, Joe Montana, and Brooke Burke. One such instance of marketing was a television advertisement featuring Karl Malone, a professional basketball player who retired from the National Basketball Association in 2005 after nineteen seasons in the league. In the advertisement, a reporter asks Karl Malone if he is coming back to the NBA. Karl answers, "Why not? I feel stronger than ever." The reporter then asks "has training been hard?" Karl answers "Hard? For me? No. Not with my Shape-ups. They help strengthen my back, my core and my legs. Man I feel great."

170. In fact, toning shoes provide no additional health benefits than do regular athletic and walking shoes. The American Council on Exercise (ACE) commissioned an independent study by the University of Wisconsin to determine if toning shoes provide the benefits that they market and promote to the public. Based on those study results, the ACE concluded that: "Across the board, none of the toning shoes showed statistically significant increases in either exercise response or muscle activation during any of the treadmill trials," ACE says. "There is simply no evidence to support the claims that these shoes will help wearers exercise more intensely, burn more calories or improve muscle strength and tone."

171. The health risks of Skechers outweigh the absence of any benefit provided to the wearer. Indeed, as of May 2011, Consumer Reports has documented that Skechers has seen more reports of injuries or complaints than any other product in its database. This is not surprising, because by altering gait mechanics and creating instability, Skechers places consumers at increased risk for chronic injuries such as stress fractures and tendon ruptures, as

well as acute injuries from falling.

172. In addition to misrepresenting the efficacy and health benefits of Skechers Shape-ups, Skechers also made numerous misrepresentations about the safety of Shape-ups, which served to lull consumers into believing that these shoes were safe despite their unbalanced appearance. For example, an instructional manual that accompanied Skechers Shape-ups, instructs the user of the shoes to "keep your center of balance with a straight back, shoulders open and knees strong, but not locked. If you feel your feet rolling in to the point where your knees are ready to knock, shift your weight to the outside edges of your Shape-ups to maintain your balance." Additionally, "The Shape-ups Guide to Healthy Eating", a pamphlet that also accompanied the shoes, states that "Shape-ups have an unstable center of balance compared to normal sports shoes. *The body will instinctively try to find the center of balance by wearing these unstable Shape-ups*." (Emphasis added).

173. These statements and others made by Skechers to consumers, including Plaintiffs, warranted that instability felt while wearing the shoes was a normal effect of the Shape-ups design. These statements affirmatively negated any doubt that consumers, including Plaintiffs, may have had regarding the safety of the Skechers Shape-ups shoes. According to Skechers' own statements in its product literature, if any injury was thought to be caused by the shoes' unstable design, it must have actually been caused by misuse of the shoes by the consumer.

174. In addition to the statements regarding the unstable design of Shape-ups, Skechers stated in an instructional DVD that accompanied the shoes offered the consumer the following promise that he or she would know the shoes were working: "You may experience some soreness at first, especially in your legs and buttocks. That's a sign that these muscles are getting exercised and the soreness should subside over time."

175. The statements regarding the "unstable design" of Shape-ups and the pain that wearing the shoes would normally cause prevented Plaintiffs, or any reasonable person similarly situated, from reasonably discovering that they had a valid cause of action against Skechers for injuries caused by the Shape-ups shoes. These statements clearly state that if there any injury caused by the shoes, it is not caused to the design of the shoe, but rather by misuse of the shoes by the consumer.

176. In an instructional DVD that accompanied Shape-up shoes, Skechers states that Shape-ups were "the newest in exercise technology." The instructional DVD goes on to say that "Shape-ups will probably feel a little awkward at first." Next, the DVD provides an in-depth lesson on how to walk in the Skechers Shape-ups:

> Take a moment to find your center of balance. Your feet should be parallel and hip distance apart. Step forward with the middle section of your heal hitting the ground first. Roll forward on to the ball of your foot and push off with your toes. Be aware of the position of your feet and ankles. Your ankles should not bend inward or outward but stay parallel. Your knees should be strong, but not locked. If you feel them locking, shift your weight to the outside edges of your Shape-Ups to maintain balance. The position of your back and neck should be straight. Don't look down. Look straight ahead. While the natural pace is best for everyday walking, we suggest you switch up your gait.

177. Skechers indicated to consumers, including Plaintiffs, that these shoes were a revolutionary exercise technology, not just a simple sneaker. Until learning that the representations concerning the Shape-ups were false, Plaintiffs had no reasonable basis to believe that their injuries were caused by the design of Shape-ups, because Skechers had specifically warranted to them that such a belief was groundless.

178. A reasonable investigation by consumers injured by Shape-ups, including Plaintiffs, would not have revealed that Shape-ups were defectively designed or that the shoes'

design was the cause of the subject injuries. A review of the literature that accompanied the shoes would not have revealed that the shoes were defectively designed, for the reasons stated in this complaint. Additionally, numerous consumers throughout the country inquired of Skechers about whether the design of the shoes was defective, after they felt pain or instability while wearing the shoes. Skechers answered these inquiries by repeating its marketing message: the shoes are designed to cause significant pressure on the human body and instability; this pressure and instability will produce the advertised health benefits; the consumer will become accustomed to the pressure and instability. Many consumers also made similar inquiries at various retail outlets at which they had purchased Shape-ups and received similar responses.

179. On May 16, 2012, a judgment in favor of the Federal Trade Commission ("FTC") was entered under which Skechers was ordered to pay $40 million to settle charges that Skechers had deceived consumers with regard to their Skechers Shape-ups and other toning shoes. The misrepresentation and deception by Skechers included claims that wearing Skechers footwear could improve muscle tone and strength, increase overall circulation or aerobic conditioning, result in increased weight loss or loss of body fat, and/or result in improvement or reduction of body composition.[1]

180. Also under the May 16, 2012, judgment, a permanent injunction was entered that prohibits Skechers from making claims that any of its footwear products can:

a. Improve or increase muscle tone and muscle strength;

b. Improve or increase overall circulation or aerobic conditioning;

c. Result in increased weight loss or loss of body fat; and/or

d. Result in improvement or reduction of body composition.

---

[1] Fed. Trade Comm'n v. Skechers U.S.A., Inc., *et al.*, Case No. 12cv01214 (N.D. Ohio filed May 16, 2012).

181. Plaintiffs relied upon the above Skechers' claims including but not limited to claims Shape-Ups would increase muscle tone and decrease body fat. But for Skechers false and misleading claims, Plaintiffs would not have purchased Skechers Shape-ups.

182. All of Skechers' marketing efforts claim that the Shape-ups are safe and improve overall health. Implied in the Defendants' false claims are representations that the shoes are also safe when in fact they greatly increase the risk of falls and chronic injuries resulting in harm due to their instability.

183. The FTC found that the "independent" study done by chiropractor Dr. Steven Gautreau did not produce the results claimed in the ads for Shape-ups. Further, it was discovered that Skechers had not only paid Dr. Gautreau to conduct the study but he was also married to a Skechers marketing executive.

184. Until the May 16, 2012, FTC judgment, no Plaintiff knew or should have known the degree to which Shape-ups were defective. Until that date, Skechers continued to represent that the shoes were not only safe but effective at improving overall health. Plaintiff s could not have discovered through reasonable investigation that these representations were false until the FTC judgment was made public.

185. Skechers continuously misled consumers as to the effectiveness of Shape-ups and as to the probability of falls while wearing Shape-ups.

186. A visit to Skechers' website does not suggest that the Shape-ups are defective. Skechers continues to sell and promote Skechers Shape-ups as well as answer customer questions in several discussion forums. Nowhere does Skechers warn consumers of the increased risk of falling or that the shoes are defective.

187. Due to their injuries, Plaintiffs have incurred significant medical expenses, could

incur future medical expenses, and have suffered physical pain and mental anguish. Further, Plaintiffs have lost wages as a result of being unable to work and their individual ability to earn money has been impaired. Additionally, they are at increased risk for future health problems and disability.

188. Unbeknownst to Plaintiffs, the purchased shoes provided no additional benefit to their health. Instead, Plaintiffs were lulled into purchasing a dangerous product that the Defendant knew produced a substantial risk of causing chronic injuries and inducing falls because of Skechers' elevated and unstable rocker-bottom sole. This elevation alters gait mechanics and creates instability. Had Plaintiffs known that the toning shoe provided no benefit to their health, they would not have purchased or worn the shoes and would not have incurred the injuries or damages they did as a result of their use of the shoes.

## FIRST CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY DEFECTIVE MANUFACTURING

189. Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

190. Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of toning shoes including the Skechers Shape-ups.

191. The Skechers Shape-ups manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, were defective in their manufacture and construction when they left the hands of Defendants in that they deviated from product specifications posing a serious risk of injury.

192. As a direct and proximate result of Plaintiffs' use of Skechers Shape-ups as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiffs suffered harm, damages and economic loss and will continue to suffer

such harm.

193. As a direct and proximate result of the foregoing, Plaintiffs are entitled to damages pursuant to the common law and applicable state statutes. Further, Defendants' actions and omissions as identified in this Complaint constitute a flagrant disregard for human life, so as to warrant the imposition of punitive damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorney's fees, and for such other and further relief as this Court deems just and proper.

**SECOND CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY DESIGN DEFECT**

194. Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

195. Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of orthopedic devices including Skechers Shape-ups.

196. The Skechers Shape-ups manufactured and supplied by Defendants was defective in design or formulation in that, when it left the hands of the Defendants, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, or it was more dangerous than an ordinary consumer would expect.

197. The Skechers Shape-ups that the Plaintiffs used had not been materially altered or modified prior to their use.

198. The foreseeable risks associated with the design or formulation of Skechers Shape-ups, include, but are not limited to, the fact that the design or formulation of Skechers Shape-ups is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

199. As a direct and proximate result of Plaintiffs' use of Skechers Shape-ups as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by Defendants, Plaintiff suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

200. As a direct and proximate result of the foregoing, Plaintiffs are entitled to damages pursuant to the common law and applicable state statutes. Further, Defendants' actions and omissions as identified in this Complaint constitute a flagrant disregard for human life, so as to warrant the imposition of punitive damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorney's fees, and for such other and further relief as this Court deems just and proper.

## THIRD CAUSE OF ACTION
## STRICT PRODUCTS LIABILTY DEFECT DUE TO INADEQUATE WARNING

201. Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

202. The Skechers Shape-ups manufactured and supplied by Defendants were defective due to inadequate warning or instruction because Defendants knew or should have known that the product created significant risks of serious bodily harm to consumers and they failed to adequately warn consumers and/or their health care providers of such risks as follows:

a. The Defendants knew or, in the exercise of reasonable care, should have known that footwear that is marketed to be worn on a daily basis during physical activity and is designed to alter gait mechanics and create instability presents a risk of chronic or acute injuries; including stress fractures, tendon and ligament damage, and falls;

b. The Defendants failed to provide the warning or instruction that a manufacturer

exercising reasonable care would have provided concerning the risk chronic and acute injuries from gait alteration and instability caused by the shoes, in light of the likelihood that the shoes would cause the harm claimed by the Plaintiffs, and in light of the likely seriousness of that harm.

203. The Defendants, as manufacturers of Skechers Shape-ups, are held to the level of knowledge of an expert in the field of that type of shoes, and had a duty to warn its consumers of the dangers associated with the shoes and failed to do so.

204. The Skechers Shape-ups manufactured and supplied by Defendants was defective due to inadequate post-marketing warning or instruction because, after Defendants knew or should have known of the risk of serious bodily harm, as set forth herein, from the use of Skechers Shape-ups, Defendants failed to provide an adequate warning to consumers and/or their health care providers of the product, knowing the product could cause serious injury as set forth herein.

205. As a direct and proximate result of Plaintiffs' use of Skechers Shape-ups as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by Defendants, Plaintiffs suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

206. As a direct and proximate result of the foregoing, Plaintiffs are entitled to damages pursuant to the common law and applicable state. Further, Defendants' actions and omissions as identified in this Complaint constitute a flagrant disregard for human life, so as to warrant the imposition of punitive damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorney's fees, and for such other and further relief as this Court deems just and proper.

## FOURTH CAUSE OF ACTION
## STRICT PRODUCTS LIABILTY DUE TO NON CONFORMANCE WITH REPRESENTATIONS

207. Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

208. Defendants are the manufacturers, designers, distributors, sellers and/or suppliers of toning shoes including the Skechers Shape-ups and made representations regarding the character or quality of Skechers Shape-ups including but not limited to:

a. Get in shape without setting foot in a gym;

b. Designed to promote weight loss, tone muscles, and improve posture;

c. Tightens abdominal muscles;

d. Improves blood circulation;

e. Improves posture;

f. Strengthens the back;

g. Firms buttocks muscles;

h. Tones and firms thigh muscles;

i. Firms calf muscles;

j. Increase cardiovascular health;

k. Reduce stress on knee and ankle joints;

l. Relieve muscle tension and fatigue;

m. Forces you to engage muscles not normally used when walking on hard ground;

n. Reduce impact on your joints and lower back;

o. Improve your life by changing the way you walk;

p. Improve stamina and metabolism.

209. The Skechers Shape-ups manufactured and supplied by Defendants were defective in that, when they left the hands of Defendants, they did not conform to representations made by Defendants concerning the product.

210. These material misrepresentations made by the Defendants were false as proved by a study from the University of Wisconsin that was commissioned by the American Council on Exercise.

211. Plaintiffs justifiably relied upon Defendants' representations regarding Skechers Shape-ups that they would provide the claimed health benefits if used in the manner directed by the labeling when Plaintiffs selected Skechers Shape-ups and wore the shoes regularly during daily activities, including walking and exercising.

212. As a direct and proximate result of Plaintiffs' use of the Skechers Shape-ups and their reliance on Defendants' representations regarding the character and quality Skechers Shape-ups, Plaintiffs suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorney's fees, and for such other and further relief as this Court deems just and proper.

## FIFTH CAUSE OF ACTION
## NEGLIGENCE

213. Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

214. Defendants had a duty to exercise reasonable care in the design, manufacture, testing, marketing and distribution into the stream of commerce of Skechers Shape-ups, including a duty to insure that Skechers Shape-ups did not pose a significantly increased risk of injury.

215. Defendants failed to exercise reasonable care in the design, manufacture, testing, marketing and distribution into the stream of commerce of Skechers Shape-ups. Defendants knew or should have known that footwear that is marketed to be worn on a daily basis during physical activity and is designed to alter gait mechanics and create instability presents a risk of chronic or acute injuries; including stress fractures, tendon and ligament damage, and falls therefore giving rise to pain and suffering, debilitation, and the need for medical treatment including possible surgery and further complications, and therefore was not safe for use by Plaintiffs.

216. Despite the fact that Defendants knew or should have known that Skechers Shape-ups could fail early in patients therefore giving rise to pain and suffering, debilitation, and therefore giving rise to pain and suffering, debilitation, and the need for medical treatment including possible surgery and further complications, Defendants continued to market Skechers Shape-ups as a safe and effective toning shoe.

217. As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered significant damages, including but not limited to physical injury, pain and suffering and further treatment and will continue to suffer such damages in the future.

218. In taking the actions and omissions that caused these damages, Defendants were guilty of malice, oppression and fraud, and Plaintiffs are therefore entitled to recover punitive damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorney's fees, and for such other and further relief as this Court deems just and proper.

**SIXTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**

219. Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

220. Defendants expressly warranted that Skechers Shape-ups were a safe and effective toning shoe.

221. Plaintiffs purchased and used Skechers Shape-ups for their intended purpose.

222. Plaintiffs relied on Defendant's express warranties.

223. The Skechers Shape-ups manufactured and sold by Defendants did not conform to these express representations because they caused serious injury to Plaintiffs when used as recommended and directed.

224. As a direct and proximate result of Defendants' breach of warranty, Plaintiffs have suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorney's fees, and for such other and further relief as this Court deems just and proper.

**SEVENTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**

225. Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

226. At the time Defendants designed, manufactured, marketed, sold, and distributed Skechers Shape-ups for use by Plaintiffs, Defendants knew of the use for Skechers Shape-ups were intended and impliedly warranted the product to be of merchantable quality and safe for such use and that its design, manufacture, labeling and marketing were sufficient.

227. Plaintiffs reasonably relied upon the skill and judgment of Defendants as to whether Skechers Shape-ups were of merchantable quality and safe for its intended use and upon Defendants' implied warranty as to such matters.

228. Contrary to such implied warranty, Skechers Shape-ups were not of merchantable quality or safe for their intended use, because the product was unreasonably dangerous and defective as described above.

229. As a direct and proximate result of Defendants' breach of warranty, Plaintiffs have suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorney's fees, and for such other and further relief as this Court deems just and proper.

## EIGHTH CAUSE OF ACTION
## NEGLIGENT REPRESENTATION AND FRAUD

230. Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

231. In regard to the Shape-ups footwear purchased and worn by the Plaintiffs, the Defendants made multiple material representations about the shoes that included:

a. Get in shape without setting foot in a gym;

b. Designed to promote weight loss, tone muscles, and improve posture;

c. Tightens abdominal muscles;

d. Improves blood circulation;

e. Improves posture;

f. Strengthens the back;

g. Firms buttocks muscles;

h. Tones and firms thigh muscles;

i. Firms calf muscles;

j. Increase cardiovascular health;

k. Reduce stress on knee and ankle joints;

l. Relieve muscle tension and fatigue;

m. Forces you to engage muscles not normally used when walking on hard ground;

n. Reduce impact on your joints and lower back;

o. Improve your life by changing the way you walk;

p. Improve stamina and metabolism.

232. These material representations made by the Defendants were false as proven by a study from the University of Wisconsin that was commissioned by the American Council on Exercise.

233. When the Defendants made these material representations, it knew that they were false, and it made the material representations recklessly without any knowledge of their truth and a positive assertion. Specifically, many of the representations are not supported by the four "studies" that the Defendants cites as support for the claims, and for those representations that the Defendants bases on the "studies", those results were misrepresented in order to be construed as supporting these representations.

234. Defendants had actual knowledge based upon studies, published reports and

clinical experience that its product, Skechers Shape-ups created an unreasonable risk of serious bodily injury yet Defendants negligently misrepresented to Plaintiffs that its toning shoes were safe and met all applicable design and manufacturing requirements.

235. The Defendants made these false, material representations with the intention of inducing buyers, including the Plaintiffs, to act by purchasing the Shape-ups footwear by appealing to the buyers' desire to own athletic footwear that would result in numerous health benefits.

236. Plaintiffs acted in justifiable reliance on these material representations made by the Defendants in that they purchased these shoes specifically under the belief that the shoes would provide the claimed health benefits if used in the manner directed by the labeling.

237. As a direct and proximate result of Defendants' fraudulent and/or negligent actions and omissions, Plaintiffs used Skechers Shape-ups and suffered harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

238. Defendants' actions and omissions as identified in this Complaint demonstrate a flagrant disregard for human life, so as to warrant the imposition of punitive damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorney's fees, and for such other and further relief as this Court deems just and proper.

## NINTH CAUSE OF ACTION
## UNJUST ENRICHMENT

239. Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

240. As the intended and expected result of their conscious wrongdoing, Defendants have profited and benefited from the purchase and use of Skechers Shape-ups by Plaintiffs.

241. Defendants have voluntarily accepted and retained those profits and benefits, derived from Plaintiffs, with full knowledge and awareness that, as a result of Defendants' fraud and other conscious and intentional wrongdoing, Plaintiffs were not receiving a product of the quality, nature, or fitness that had been represented by Defendants, or that Plaintiffs, as reasonable consumers, expected to receive.

242. By virtue of the conscious wrongdoing alleged above, Defendants have been unjustly enriched at the expense of Plaintiffs, who are entitled in equity, and hereby seek, the disgorgement and restitution of Defendants' wrongful profits, revenues and benefits, to the extent and in the amount deemed appropriate by the Court; and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorney's fees, and for such other and further relief as this Court deems just and proper.

## TENTH CAUSE OF ACTION
## VIOLATION OF UNFAIR AND DECEPTIVE TRADE PRACTICES ACTS

243. Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

244. Defendants have a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, development, manufacture, promotion, and sale of Skechers Shape-ups.

245. Had the Defendants not engaged in the deceptive conduct described herein, Plaintiff would not have purchased and/or paid for Skechers Shape-ups and would not have incurred related medical costs.

246. Specifically, Plaintiffs were misled by the deceptive conduct described herein.

247. Defendants' deceptive, unconscionable, or fraudulent representations and material

omissions to consumers, including Plaintiffs, constituted unfair and deceptive acts and trade practices in violation of the state consumer protection statutes listed below.

248. Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, substantial sums of money from Plaintiff for Skechers Shape-ups that they would not have paid had Defendants not engaged in unfair and deceptive conduct.

249. Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or trade practices.

250. Plaintiffs were injured by the cumulative and indivisible nature of Defendants' conduct. The cumulative effect of Defendants' conduct directed at consumers was to create a demand for and sell Skechers Shape-ups. Each aspect of Defendants' conduct combined to artificially create sales of Skechers Shape-ups.

251. Consumers relied upon Defendants' misrepresentations and omissions in determining which shoes to purchase.

252. By reason of the unlawful acts engaged in by Defendants, Plaintiffs have suffered ascertainable loss and damages.

253. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs were damaged by paying in whole or in part for Skechers Shape-ups.

254. As a direct and proximate result of Defendants' violations of consumer protection statutes. Plaintiffs have sustained economic losses and other damages for which they are entitled to statutory and compensatory damages, and declaratory relief, in an amount to be proven at trial.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorney's fees, and for such other and further relief as this Court deems just and proper.

## ELEVENTH CAUSE OF ACTION
## PUNITIVE DAMAGES

255. Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs, as though fully set forth herein.

256. At all times material hereto, the Defendants knew or should have known that Skechers Shape-ups were inherently more dangerous and prone to failure than toning shoes.

257. At all times material hereto, the Defendants attempted to misrepresent and did misrepresent facts concerning the safety and efficacy of Skechers Shape-ups.

258. Defendants' misrepresentation included intentionally withholding material information from the medical community and the public, including Plaintiff, regarding the safety of Skechers Shape-ups.

259. Notwithstanding the foregoing, Defendants continued to aggressively market Skechers Shape-ups to consumers, including Plaintiff, without disclosing the aforesaid problems and injuries.

260. The Defendants knew of Skechers Shape-ups' defective and unreasonably dangerous nature, as set forth herein, but continued to design, develop, manufacture, market, distribute and sell it so as to maximize sales and profits at the health and safety of the public, including Plaintiff, in conscious and/or reckless disregard of the foreseeable harm caused by the device.

261. Defendants fraudulently, intentionally, and/or recklessly concealed and failed to disclose to the public, including Plaintiff, the dangers of Skechers Shape-ups in order to ensure continued and increased sales.

262. Defendants' intentional and/or reckless failure to disclose information deprived Plaintiff of the necessary information to enable Plaintiff to weigh the true risk of using Skechers

Shape-ups against the benefits.

263. The aforesaid conduct of Defendants in the design, manufacturing, assembly, packaging, warning, marketing, advertising, promotion, distribution and sale of Skechers Shape-ups was fraudulent, knowing misconduct, willful and/or conduct undertaken to recklessly and with conscious disregard for the safety of Plaintiff such as to constitute despicable conduct, and oppression, fraud and malice, and at all times relevant, such conduct was ratified by the corporate Defendants herein, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish and set an example to Defendants, and to deter them from similar conduct in the future.

264. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein pursuant to all appropriate state statutes and common law. The injuries and damages alleged herein are permanent and will continue into the future.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in a sum in excess of $25,000, for costs herein incurred, for attorney's fees, and for such other and further relief as this Court deems just and proper.

## PRESERVATION CLAIMS

265. Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

266. Many States have recently enacted tort reform statutes with "exclusive remedy" provisions. Courts have yet to determine whether these exclusive remedy provisions eliminate or supersede, to any extent, state common law claims. If during the pendency of this action this court makes any such determination, Plaintiffs hereby specifically make claim to and preserve any State claim based upon any exclusive remedy provision, under any state law this court may

apply, to the extent not already alleged above.

267. To the extent that Defendant(s) may claim that one or more of Plaintiffs' claims are barred by the applicable statute of limitations, Plaintiff asserts that the statute of limitations is and has been tolled by Plaintiffs' discovery that their injury(ies) was/were caused by Defendants' defective product and failure to properly and adequately warn of the products' risks, all as more fully set forth in this Complaint, after the injury sustained by Plaintiffs.

268. The parties agreed to toll the statute of limitations pursuant to a written tolling agreement executed between the parties on March 14, 2014. The Tolling Agreement was effective from the date of execution until its expiration on October 14, 2014. Under the Tolling Agreement, tolling continues for ninety (90) days after expiration to allow for filing of Complaints. Plaintiffs' claims are protected from a statute of limitations defense consistent with this Tolling Agreement. Plaintiffs have not attached a copy of the Tolling Agreement but are able and willing to do so upon request of the Court or any party in this case.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

A. Trial by Jury;
B. Judgment in favor of Plaintiffs and against all Defendants, for all damages in such amounts as may be proven at trial;
C. Compensation for non-economic losses, including, but not limited to medical expenses, disfigurement, pain and suffering, mental anguish and emotional distress, in such amounts as may be proven at trial;
D. Punitive and/or exemplary damages in such amounts as may be proven at trial;
E. Restitution and disgorgement of all revenue that Defendants have obtained through the manufacture, marketing, and sale of Skechers Shape-ups;
F. Attorney's fees and costs;

G. Pre and post-judgment interest; and

H. Any and all further relief, both legal and equitable, that the court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated: January 6, 2014

RESPECTFULLY SUBMITTED:

/s/ John J. Driscoll
John J. Driscoll (54729)
**The Driscoll Firm, P.C.**
One Metropolitan Square
211 North Broadway, 40th Floor
St. Louis, MO 63102
314-932-3232 – Telephone
314-932-3233 – Facsimile
john@thedriscollfirm.com

**STATE OF MISSOURI )**
**)ss**
**CITY OF ST. LOUIS )**

**I, THOMAS KLOEPPINGER, Clerk of the Circuit Court within and for the City of St. Louis, State of Missouri, do hereby certify that the foregoing are true copies of original documents on files and recorded in my office for the following case**
**ENTIRE FILE**

---

**St. Louis City case number 1522-CC00018**

**WITNESS my hand and SEAL of said Court this 13TH day of FEBRUARY, 2015.**

**Thomas Kloeppinger**
**Circuit Clerk**

**By:**
**Deputy Clerk**

**SEAL of the CIRCUIT COURT**